# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

Nᵒˢ 16-CV-414 (JFB)
_____

JAMES J. BORDONARO,

Debtor, Appellant,

VERSUS

FIDO'S FENCES, INC.,

Creditor, Appellee.

_____

**MEMORANDUM AND ORDER**
January 20, 2017
_____

JOSEPH F. BIANCO, District Judge:

James J. Bordonaro ("Bordonaro" or "debtor") appeals from an order entered by the United States Bankruptcy Court for the Eastern District of New York in the underlying bankruptcy proceeding. After a trial held on May 12, 2015 and September 17, 2015, the Honorable Robert E. Grossman issued a written opinion dated January 12, 2016 in which he denied the debtor's discharge pursuant to 11 U.S.C. §§ 727(a)(3) and (a)(4)(A). *In re Bordonaro*, 543 B.R. 692, 703 (Bankr. E.D.N.Y. 2016). Judge Grossman found that creditor Fido's Fences ("creditor") proved by a preponderance of the evidence that debtor "concealed, destroyed, mutilated, falsified, or failed to keep or preserve records, without justification when [debtor] (i) produced redacted bank statements without justification and (ii) failed to produce his log of cash transactions, despite order by the Court." *Id.* at

695. He further found that the debtor "knowingly and fraudulently made a false oath in the . . . bankruptcy case when [debtor], under penalty of perjury, misstated his income and assets and misrepresented that [creditor] held an unsecured claim rather than a secured claim on his Schedules and Statement of Financial Affairs." *Id.* Judge Grossman concluded that these were sufficient grounds to deny the discharge. *Id.*

This Court holds that the Bankruptcy Court did not clearly err in concluding that debtor (1) failed to produce the required documents without adequate justification under Section 727(a)(3), and (2) fraudulently made materially false statements on the original petition in violation of Section 727(a)(4)(A). Moreover, in light of these findings, the Bankruptcy Court correctly denied debtor's discharge. Accordingly, the Order of the Bankruptcy Court dated Janu-

ary 12, 2016 denying debtor's discharge is affirmed.

## I. BACKGROUND

### A. Facts

The following facts are taken from the record of the Bankruptcy Court in the underlying proceeding.[1]

Debtor owned and operated Advance Graphics Design and Engineering and Advance Graphics Design and Development Corp. (collectively "Advance Graphics"). (R2 at 86–87.) In his capacity as owner and operator of this business, debtor became experienced in business management, including the balancing of accounts and business accounts. (*Id.* at 87.) Debtor also worked as an adjunct professor at the New York Institute of Technology and owned real property in Bay Shore, New York located at 1707 North Gardiner Drive ("1707 North Gardiner") and 1705 North Gardiner Drive ("1705 North Gardiner"). (*Id.* at 87.)

In March 2013, creditor obtained a money judgment against Advance Graphics and debtor individually in the Supreme Court of New York, County of Nassau, due to debtor's non-payment pursuant to the terms of a Stipulation of Settlement dated October 12, 2012. (*Id.*) Creditor then filed an Execution Against Property with the Suffolk County Sheriff's Office to collect the amount owed. (*Id.*) As a result, 1705 North Gardiner was scheduled for auction on January 21, 2014.

---

[1] "R1 at __" refers to the numbered documents in the exhibit described as "additional documents 14-70190" filed with the Court on March 8, 2016. (*See* ECF No. 3-3.) "R2 at __" refers to the exhibit described as "additional documents part 1" (*see* ECF No. 3-4), and "R3 at __" refers to the exhibit described as "additional documents part 2" (*see* ECF No. 3-5).

### B. Bankruptcy Proceedings

#### 1. The Original Petition

On January 20, 2014 (the "Petition date"), the day before the auction, debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code (the "Petition") (R1 at 5–57), which stayed the auction (R2 at 88). With the Petition, he filed various schedules, a statement of financial affairs ("SOFA"), and a Form 22A Chapter 7 Statement of Current Monthly Income and Means-Test Calculation ("Means Test"). He read all of these documents before signing them (R2 at 88) and signed them attesting to their accuracy under penalty of perjury (R1 at 7, 34, 42, 55; R2 at 88).

On Schedule A of the Petition, debtor listed both of his properties as real property in which he held a legal interest but indicated that there was $0.00 in secured claims on 1705 North Gardiner. (R1 at 12; R2 at 88.) On Schedule B, he indicated that he maintained a business checking account at New York Commercial Bank with a balance of $100. (R1 at 13.) He listed only Nationstar Mortgage as a creditor holding a secured claim on Schedule D. (R1 at 17.) Creditor was not listed on this schedule as a secured creditor. (*Id.*; R2 at 88.) Instead, it was listed on Schedule F as a creditor holding an unsecured priority claim in the form of a Money Judgment in the amount of $150,175.14. (R1 at 24.) With respect to his income, debtor indicated on Schedule I that he was self-employed, earned $1,995.58 in net income from operating a business, and received $925.00 a month in food stamps, for a total monthly income of $2,920.58. (R1 at 30.) He noted on Schedule J that his monthly expenses were $2,927.80, for a net monthly income of -$7.22. (*Id.* at 33.)

On his SOFA, debtor indicated that his sole source of income was the operation of

his business and that his income from that business was $22,255 in 2012, $23,000 in 2013, and $3,100 in 2014 prior to the Petition Date. (*Id.* at 35.) He noted that creditor's lawsuit had been "[s]ettled per [s]tipulation" (*id.* at 36), that none of his property had been attached, garnished, or seized within one year of the Petition Date (*id.*), and that he had no ownership interest in any business (*id.* at 40). Debtor listed small business checking and savings accounts with Capital One as closed financial accounts, with $200 in checking and $50 in savings as of March 2013. (*Id.* at 38.)

Finally, on debtor's Means Test, he indicated that the monthly gross receipts from the operation of his business were $3,353.17, monthly expenses were $1,390.50, for a total income of $1,962.67, or $23,552.05 per year. (*Id.* at 50–51.)

### 2. Creditor's Complaint and Debtor's Amendments to the Petition

Creditor filed a complaint in the Bankruptcy Court on October 2, 2014, asserting that debtor's discharge should be denied due to debtor's failure to keep adequate records and false statements he made in the Petition that violated 11 U.S.C. § 727(a). (R2 at 4.) Creditor alleged that debtor made the following false statements, among others:

- Creditor was listed as an unsecured creditor when debtor knew creditor's debt was secured.

- Debtor's year-to-date income for 2014 was listed as $2,920.58 and $3,100 despite a bank deposit of $8,621.00 during that period.

- The SOFA reported that debtor had no income other than from employment or operation of a business even though debtor also collected rental income.

- The SOFA stated that debtor had no interest in any business, despite his ownership of Advance Graphics.

- The SOFA stated that none of debtor's real property had been attached, garnished, or seized in the past year, even though creditor obtained a lien during that period.

(R2 at 7–18.)

On October 28, 2014, following the filing of the complaint, debtor amended Schedules A, D, F, I, and J, the SOFA, and the Means Test (the "First Amended Schedules"), signing the amendments under penalty of perjury and attesting to their accuracy. (R1 at 350.) He amended Schedule A to reflect that there was a secured claim on 1705 North Gardiner in the amount of $150,175.14 (*id.* at 352) and Schedules D and F to reflect that creditor held a secured claim for that amount (*id.* at 353, 354–59). On Schedule I, debtor amended the following entries:

(1) employment information, to show debtor was not employed (*id.* at 360);

(2), (4), and (7), to show a monthly income of $1,760.24 rather than $0.00 (*id.* at 360–61);

(8a) net income from rental property and from operating a business, to show an income of $0.00 rather than $1,995.58 (*id.* at 361);

(9) all other income, to show $925, rather than none (*id.*);

3

(10) and (12), to show a monthly income of $2,685.24 rather than $2,920.58 (*id.*); and

(13) expectation of changes in income, from "No" to "Yes," explained by debtor's statement that he no longer expected to receive rental income (*id.*).

Debtor also amended entries (2), (23a), and (23c) on Schedule J, (2) to indicate he had no dependents and remove the list of eight dependents included in the Original Petition, (23a) to reflect the combined monthly income of $2,685.24 reported in the amended Schedule I, and (23c) to reflect a monthly net income of -$242.56. (*Id.* at 363–64.) In his SOFA, debtor altered his income from employment or operation of a business for 2014 year-to-date from $3,100 to $7,696, for 2013 from $23,000 to $8,202, and for 2012 from $22,255 to no entry. (*Id.* at 368.) He also amended other income to include $9,800 from rental property and $22,200 in food stamps; property attached to reflect creditor's lien on 1705 North Gardiner; payments related to bankruptcy from $2,000 to the Law Office of Catherine May to none; and nature, location, and name of business from none to Advance Graphics Design and Development Corp. and Advance Graphics Design and Engineering. (*Id.* at 368–74.) Finally, debtor amended his Means Test to show monthly gross receipts of $1,760.24, rather than $3,353.17, and $0.00 in monthly expenses, rather than $1,390.50, for a total of $1,760.24. (*Id.* at 376.) He also listed $700 in gross receipts in rent and other real property income and $925 in food stamps as income from all other sources, both changed from initial reports of $0.00. (*Id.*)

After trustee Kenneth Kirschenbaum filed a notice of discovery of assets on December 3, 2014 (*id.* at 384), debtor filed additional amendments on January 20, 2015

(the "Second Amended Schedules") (*id.* at 400). He amended Schedule B to include $12,000.00 that his former tenants owed him as personal property (*id.* at 402) and Schedule F to list $500 in unsecured debt owed by those tenants (*id.* at 408). The SOFA was also amended to reflect debtor's corresponding lawsuit against them. (*Id.* at 412.)[2]

### 3. The Trial and the Bankruptcy Court's Decision

The Bankruptcy Court held a trial on May 12, 2015 and September 17, 2015. (R2 at 105–278, 281–348). Debtor produced redacted bank statements that obscured certain amounts and identities of payors and payees (*see e.g.*, R3 at 652; R2 at 118–20, 147–48), explaining that he made these redactions to protect trade secrets, specifically the identities of his vendors (R2 at 119–20). Debtor also claimed to keep a cash log detailing his cash transactions for the business, as well as a spreadsheet separating his business expenses from his personal expenses, but he never produced the cash log despite being ordered to do so. (*See id.* at 121–122, 130, 285–87, 334–35.) Meanwhile, his account statement for his New York Commercial Bank business account indicated his remaining balance was $181.53, rather than the $100 reported in the original petition. (R3 at 681; *see also* R1 at 13.) Likewise, his Capital One D/B/A account statement

---

[2] In its decision, the Bankruptcy Court also indicated that debtor filed a third amendment on September 4, 2015, amending the SOFA "to change entry # 1, income from employment or operation of a business, for 2013 from $8,202.00 to $7,545 'gross income from Operation of D/B/A' and $7,506 for 'Income derived from Corporation,' and for 2012 from no entry to $40,633.00 'Gross receipts from operation of D/B/A.'" *Bordonaro*, 543 B.R. at 698. This amendment, however, does not appear in the record on appeal and, in any event, is immaterial to this Court's analysis of the issues. Therefore, it is not considered.

showed that this account was open and in use until July 2013, with a March 2013 balance of $1,068.67 (R3 at 784, 796), where the Petition indicated that he closed that account in March of 2013 with a balance of only $200 (R1 at 38). To explain these inaccuracies and other inaccuracies identified by creditor, debtor testified that they were honest mistakes or attributable to his attorney. (*See, e.g.*, R2 at 113–114, 133–34, 189–92, 210–11.)

The Bankruptcy Court issued a decision denying debtor's discharge on January 12, 2016. *See Bordonaro*, 543 B.R. at 692. The Bankruptcy Court first concluded that creditor "established that [debtor] either failed to keep, or at least, failed to produce, adequate business records, such that the [creditor] and the Court are unable to accurately ascertain the [debtor's] present financial condition and the nature of the Defendant's prepetition business transactions," as required under 11 U.S.C. § 727(a)(3). *Bordonaro*, 543 B.R. at 701. It then determined that debtor also violated 11 U.S.C. § 727(a)(4)(A) by knowingly and fraudulently making materially false statements in the petition. *Id.* at 702. Based on these conclusions, the Bankruptcy Court denied his discharge. *Id.* at 703.

## C. Appeal

Acting *pro se*, debtor filed his notice of appeal from the Bankruptcy Court's decision on January 22, 2016. (ECF No. 1.) The Court received the record on March 8, 2016 (ECF No. 3), and the parties filed their briefs in April and May of 2016 (ECF Nos. 4–6.) The Court has fully considered the parties' submissions.

## II. STANDARD OF REVIEW

This Court has jurisdiction to hear appeals from bankruptcy courts under 28 U.S.C. § 158(a), which provides that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees; . . . [and] with leave of the court, from other interlocutory orders and decrees . . . of bankruptcy judges." 28 U.S.C. § 158(a)(1), (3). Part VIII of the Federal Rules of Bankruptcy Procedure outlines the procedure governing such appeals. Fed. R. Bankr. P. 8001.

The Court will review the Bankruptcy Court's legal conclusions *de novo* and its factual findings for clear error. *See In re Hyman*, 502 F.3d 61, 65 (2d Cir. 2007); *see also In re Bayshore Wire Prods. Corp.*, 209 F.3d 100, 103 (2d Cir. 2000) ("Like the District Court, we review the Bankruptcy Court's findings of fact for clear error, . . . its conclusions of law *de novo*, . . . [and] its decision to award costs, attorney's fees, and damages for abuse of discretion." (citations omitted)); *accord In re Ionosphere Clubs Inc.*, 922 F.2d 984, 988–89 (2d Cir. 1990). Clear error exists "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Dist. Lodge 26, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. United Techs. Corp.*, 610 F.3d 44, 51 (2d Cir. 2010) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)); *see also Collins v. Hi-Qual Roofing & Siding Materials, Inc.*, Nos. 02-CV-0921E(F), 02-CV-0922E(F), 2003 WL 23350125, at *4 n.16 (W.D.N.Y. Dec. 18, 2003) ("'[A] finding is only clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . This standard precludes this Court

from reversing the Bankruptcy Court's decision if its account of the evidence is plausible, even if this Court is convinced that it would have weighed the evidence differently.'" (quoting *In re B. Cohen & Sons Caterers, Inc.*, 108 B.R. 482, 484 (E.D. Pa. 1989))). Under the clear error standard, credibility determinations "are entitled to 'particularly strong deference.'" *In re Persaud*, 496 B.R. 667, 678 (E.D.N.Y. 2013) (quoting *Castrol, Inc. v. Quaker State Corp.*, 977 F.2d 57, 64 (2d Cir. 1992)); *accord Falbaum v. Leslie Fay Companies, Inc.*, 182 F.3d 899 (2d Cir. 1999).

### III. DISCUSSION

The Bankruptcy Code discharges preexisting debts in order to give "honest but unfortunate" debtors a fresh start. *Cohen v. de la Cruz*, 523 U.S. 213, 217 (1998). A discharge releases a debtor from personal liability for all allowed claims and debts that arose prior to the commencement of the debtor's bankruptcy case. *See* 11 U.S.C. § 727(b). Nevertheless, the Bankruptcy Code contains numerous exceptions to the "fresh start" principle and denies relief to debts resulting from certain types of undesirable behaviors, such as fraud. Section 727 of the Bankruptcy Code enumerates several circumstances that require the denial of discharge, including a debtor's failure to maintain material records or his fraudulent inclusion of knowingly false statements. 11 U.S.C. §§ 727(a)(3), (a)(4)(A).

Because Section 727 "impos[es] an extreme penalty for wrongdoing, [it] must be construed strictly against those who object to the debtor's discharge and liberally in favor of the bankrupt." *In re Cacioli*, 463 F.3d 229, 234 (2d Cir. 2006) (citation omitted). Correspondingly, the objecting party bears the burden of proving the applicable elements of Section 727 by a preponderance of the evidence. *In re Pisculli*, 408 F. App'x

477, 479 (2d Cir. 2011) (citing *Grogan v. Garner*, 498 U.S. 279, 291 (1991)).

Here, the Bankruptcy Court rested its denial of debtor's discharge on two independent grounds: his failure to produce adequate business records without adequate justification in violation of 11 U.S.C. § 727(a)(3) and the material false oaths he made in his original petition in violation of 11 U.S.C. § 727(a)(4)(A). Debtor challenges both holdings.

### A. 11 U.S.C. § 727(a)(3)

#### 1. Applicable Law

Under Section 727(a)(3), a court may deny discharge if "the debtor has . . . failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." 11 U.S.C. § 727(a)(3). The purpose of this provision "is to make the privilege of discharge dependent on a true presentation of the debtor's financial affairs." *Cacioli*, 463 F.3d at 234 (quoting *In re Underhill*, 82 F.2d 258, 260 (2d Cir. 1936)). In assessing whether a debtor has met this requirement, courts employ "a two-step approach." *Id.* at 235. First, the creditor must "show that the debtor failed to keep and preserve any books or records from which the debtor's financial condition or business transactions might be ascertained." *Id.* In addressing this question, this Court asks "whether there is available written evidence made and preserved from which the debtor's present financial condition, and his recent business transactions for a reasonable period in the past, may be ascertained with substantial completeness and accuracy." *In re Sethi*, 250 B.R. 831, 838 (Bankr. E.D.N.Y. 2000).

Once the creditor meets the initial burden, "the burden falls upon the bankrupt to satisfy the court that his failure to produce them was justified." *Cacioli*, 463 F.3d at 234. In deciding this issue, "the court considers the education, experience and sophistication of the debtor; the volume of the debtor's business; the complexity of the debtor's business; the amount of credit extended to debtor in his business; and any other circumstances that should be considered in the interest of justice." *In re Jacobowitz*, 309 B.R. 429, 436 (S.D.N.Y. 2004) (quoting *Meridian Bank v. Alten*, 958 F.2d 1226, 1231 (3d Cir. 1992)).

### 2. Analysis

The Bankruptcy Court here determined that creditor met its burden in proving that debtor failed to produce adequate business records that would allow it to assess debtor's financial condition. *Bordonaro*, 543 B.R. at 701. Specifically, it reasoned that debtor's redactions on his bank statements and his failure to produce his cash log made "it impossible for [creditor] and the Court to have an accurate understanding of [debtor's] financial condition. As a result, the Court is unable to use the documents to reconcile or corroborate the information contained in the Petition." *Id.* Furthermore, the Bankruptcy Court was "unpersuaded by [debtor's] argument that the redactions were to protect the trade secrets of [debtor], especially since the amounts [debtor] paid or was paid [were] certainly not trade secrets." *Id.* The Bankruptcy Court, therefore, held that there was "no good faith basis to redact the bank statements, or to fail to produce the cash log." *Id.*

As a threshold matter, this Court concludes that the Bankruptcy Court did not err in concluding that creditor met its initial burden. *See Cacioli*, 463 F.3d at 234; *Sethi*, 250 B.R. at 838. The information contained

in the redacted bank statements and cash logs could have assisted the Bankruptcy Court in determining the accuracy of debtor's reported income and, correspondingly, debtor's overall credibility, an essential issue in the case. At trial, debtor testified that he would pay personal expenses from his business account (R2 at 121–22) and would make some payments in cash, which he recorded in a cash log (R2 at 130). The Bankruptcy Court expressed concerns that these practices would result in debtor understating his income, especially in light of how low debtor's reported income was given his family size. (*Id.* at 124–28, 141–43, 147–48.) Debtor testified that he tracked which expenses were personal and which were business-related in his personal records (*id.* at 121–22), but the absence of complete bank records or debtor's cash log prevented the Bankruptcy Court from ascertaining whether this was true. Correspondingly, it could not determine whether debtor understated his income in the Petition by not reporting personal expenses paid for through the business account as income. Thus, creditor met its burden in proving that debtor failed to produce "written evidence . . . from which [debtor's] present financial condition . . . may be ascertained *with substantial completeness and accuracy*." *Sethi*, 250 B.R. at 838 (emphasis added).

In addition, this Court finds that the Bankruptcy Court did not clearly err in declaring debtor's explanation inadequate. *See In re McCormack*, No. 06-1053-(BK), 2007 WL 642945, at *1 (2d Cir. Feb. 27, 2007) (slip op.) (reviewing bankruptcy court's determination that loss of business records was justified for clear error). First, debtor offered no justification for his initial failure to produce the cash log and, indeed, assured the Bankruptcy Court at the May 12 trial that he would produce it "tomorrow." (R2 at 130.) At the September 17 trial, counsel informed the Bankruptcy Court that he

failed to produce the log because he misunderstood the order, taking the word "tomorrow" to mean "at the conclusion of the hearing." (*Id.* at 285.) Given the plain meaning of the Bankruptcy Court's order directing production of the cash log "tomorrow," *i.e.*, the next day, this Court finds counsel's misunderstanding of that directive unreasonable, and thus it does not constitute an adequate basis for failing to produce the cash log.

With respect to the redacted bank statements, the Bankruptcy Court correctly concluded that debtor's justification—the protection of trade secrets—was inadequate to explain why he redacted the amounts paid from his bank statements, as that information posed no risk of exposing the identities of his vendors. Furthermore, to the extent the Bankruptcy Court simply disbelieved debtor's testimony regarding the reasons for the redactions based on his demeanor and the totality of the circumstances, *see Bordonaro*, 543 B.R. at 701 ("This Court is unpersuaded by [debtor's] argument that the redactions were to protect [his] trade secrets . . . ."); *id.* at 700 ("Based on the conduct of [debtor], the Court finds his testimony lacks credibility and is to be discounted."), there is no basis to disturb that credibility finding. *See, e.g.*, *In re Southold Dev. Corp.*, 173 B.R. 63, 73 (E.D.N.Y. 1994) ("On appeal, the Court must give due deference to the trial court's opportunity to observe, firsthand, witness demeanor and credibility, and credibility findings cannot be disregarded in the absence of facts which would compel contrary inferences. Simply put, the trial court is in a much better position to determine credibility."). Indeed, as noted above, the Bankruptcy Court expressed concerns at trial that the real reason for the redactions might have been debtor's desire to conceal personal transactions completed through his business account that

were not reported as income. (R2 at 124–28, 141–43, 147–48.)

On the basis of the record, therefore, this Court is not "left with the definite and firm conviction that a mistake has been committed" by the Bankruptcy Court when it rejected debtor's justification for his failure to produce the material documents. *Dist. Lodge 26*, 610 F.3d at 51 (quoting *U.S. Gypsum Co.*, 333 U.S. at 395). It follows that the Bankruptcy Court did not err in denying his discharge, pursuant to 11 U.S.C. § 727(a)(3), on this ground.

## B.  11 U.S.C. § 727(a)(4)(A)

### 1.  Applicable Law

Under Section 727(a)(4)(A), a court may deny a discharge if "the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account." 11 U.S.C. § 727(a)(4)(A). To prove an objection to discharge under this section, the party objecting to discharge must establish that: "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew that the statement was false; (4) the debtor made the statement with intent to deceive; and (5) the statement related materially to the bankruptcy case." *In re Moreo*, 437 B.R. 40, 59 (E.D.N.Y. 2010) (citation omitted); *see also In re Boyer*, 328 F. App'x 711, 715 (2d Cir. 2009). A single statement in violation of Section 727(a)(4)(A) is sufficient to deny a debtor's discharge. *In re Nazzaro*, No. 810-74869-REG, 2013 WL 145627, at *7 (Bankr. E.D.N.Y. Jan. 14, 2013); *see also, e.g.*, *In re Grondin*, 232 B.R. 274, 277 (B.A.P. 1st Cir. 1999); *Matter of Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992).

The materially false statements recognized under Section 727(a)(4)(A) may have been made as part of or omitted from the

bankruptcy petition, schedules, statement of affairs, or during examinations or the bankruptcy proceeding itself. *See, e.g.*, *In re Abramov*, 329 B.R. 125, 132 (E.D.N.Y. 2005); *In re Smorto*, No. 07-CV-2727 (JFB), 2008 WL 699502, at *4 (E.D.N.Y. Mar. 12, 2008). A debtor's intent to defraud or deceive can be proven by evidence of either (1) the debtor's actual intent to deceive or (2) reckless disregard for the truth. *In re Adler*, 395 B.R. 827, 843 (E.D.N.Y. 2008); *see also Dranichak v. Rosetti*, 493 B.R. 370, 379 (N.D.N.Y. 2013); *In re Gardner*, 384 B.R. 654, 667 (Bankr. S.D.N.Y. 2008) (citations omitted). Intent to defraud, however, "will not be found in cases of ignorance or carelessness." *Gardner*, 384 B.R. at 667.

With respect to reckless indifference to the truth, courts in the Second Circuit have correctly recognized that fraudulent intent may be inferred from a series of incorrect statements contained in the schedules. *See In re Dubrowsky*, 244 B.R. 560, 571–72 (E.D.N.Y. 2000) ("[I]t is important to note that under section 727(a)(4)(A), a reckless indifference to the truth is sufficient to sustain an action for fraud." (citations omitted)); *In re Casado*, 187 B.R. 446, 450 (Bankr. E.D.N.Y. 1995) (citing, *inter alia*, *Diorio v. Kreister–Borg Constr. Co.*, 407 F.2d 1330, 1331 (2d Cir. 1969); *In re Kaiser*, 722 F.2d at 1583 n.4)); *see also Smorto*, 2008 WL 699502, at *6 (citing cases). In examining whether debtors exhibited a reckless disregard or indifference to the truth, a court may consider, among other factors:

> (a) the serious nature of the information sought and the necessary attention to detail and accuracy in answering; (b) a debtor's lack of financial sophistication as evidenced by his or her professional background; and (c) whether a debtor repeatedly blamed recurrent errors on carelessness or failed to take advantage of an

opportunity to clarify or correct inconsistencies.

*In re Antoniou*, 515 B.R. 9, 24 (Bankr. E.D.N.Y. 2014) (citations omitted). In addition, "while subsequent disclosure before an objection to discharge is filed may be some evidence of innocent intent, the effect of a false statement is not cured by correction in a subsequently filed schedule."[3] *Weiss v. Winkler*, No. 98-CV-5742 FB, 2001 WL 423050, at *3 (E.D.N.Y. Mar. 30, 2001) (citation omitted).

Once the moving party meets its initial burden to produce evidence of a false statement, "the burden of production then shifts to the debtor[] to produce a 'credible explanation' for making the 'false and fraudulent representations,'" *In re St. Clair*, No. 13-MC-1057 (SJF), 2014 WL 279850, at *7 (E.D.N.Y. Jan. 21, 2014) (quoting *Moreo*, 437 B.R. at 59), or to "prove that it was not an intentional misrepresentation," *Gardner*, 384 B.R. at 668 (citations omitted). In assessing a debtor's explanation, "[c]ourts may consider the debtor's education, business experience, and reliance on counsel . . . but the debtor is not exonerated by pleading that he or she relied on patently improper advice of counsel." *In re Maletta*, 159 B.R. at 112 (quoting *In re Kelly*, 135 B.R. 459, 462 (Bankr. S.D.N.Y. 1992)). Furthermore, purported reliance on the advice of counsel cannot excuse a false representation in a petition when the error should be plainly obvious to the debtor. *Dubrowsky*, 244 B.R. at 573 ("An explanation by the debtor that he acted on advice of counsel, who in turn was fully aware of all the relevant facts, generally rebuts an inference of fraud. However,

---

[3] For this reason, debtor's argument that he had a right to amend and that his amended schedules "should not be held against [him]" (Appellant's Br., ECF No. 4, at 16) is unpersuasive, given that he only amended the Petition *after* creditor filed an objection.

even the advice of counsel is not a defense to a charge of making a false oath or account when it is transparently plain that the property should be scheduled.") (citing *In re Mascolo*, 505 F.2d 274, 277 (1st Cir. 1974)); *Kelly*, 135 B.R. at 462 ("The defense of reliance on counsel is not available when it is transparently plain that the advice is improper.")).

## 2. Analysis

Here, the Bankruptcy Court cited several false statements in the original Petition as the basis for its Section 727(a)(4)(A) holding, including:

> listing [creditor] as an unsecured creditor without a lien; that no property had been attached in the preceding year; the New York Community Bank account had a $100 balance; the Capital One Bank account had been closed in March, 2013 with a $200 balance; [debtor] had not issued any financial statements to any financial institution within two years; that [debtor] did not own any businesses, etc.

*Bordonaro*, 543 B.R. at 702. Furthermore, the Bankruptcy Court found, "most materially," that debtor "made various misrepresentations regarding the amounts and sources of his income, as evidenced both by the testimony at trial and the subsequent amendment of these amounts and sources." *Id.* It deemed all these statements material because "they relate directly to [debtor's] finances, business dealings, and disposition of his property." *Id.*

The Bankruptcy Court then found that the evidence established debtor's knowledge of the statements' falsity because his "testimony demonstrated a deep involvement with and understanding of his own finances,

as evidenced by his analysis of his bank statements in order to determine and segregate his personal and business deductions." *Id.* From this, the Bankruptcy Court inferred that debtor "would have been aware of the amounts and sources of his income, the amounts in his bank accounts, and the date of closing of his Capital One Account, especially given the fact that he prepared his own tax returns and reviewed the documents in preparing the Petition." *Id.* Furthermore, the Bankruptcy Court pointed out that, at trial, debtor "testified that, while reviewing and signing the Petition, he knew that [creditor] had obtained a lien on 1705 North Gardiner and that said lien had attached within the prior year." *Id.*

Having determined that creditor established that debtor knowingly made materially false statements, the Bankruptcy Court shifted the burden to debtor to proffer an explanation for those statements. *Id.* It held, however, that debtor failed to provide such an explanation, finding his "claim of innocent mistake . . . unpersuasive given that [debtor] had access to and was familiar with the bank statements and other documents detailing his financial condition, and that he was aware of [creditor's] lien." *Id.* In addition, after finding that "the timing of [debtor's] amendments to the schedules call[ed] into serious question [his] assertion that the amendments were good faith attempts to meet his disclosure obligations," the Bankruptcy Court generally discounted his credibility because of the "numerous instances of misstatements and dishonest conduct by [debtor] . . . including making demonstrably false statements regarding the location of his residence, his assets, and his income, to various Federal and New York State agencies and a bank." *Id.* at 699–700.

The Bankruptcy Court did not err in concluding that creditor met its burden on the first two elements because debtor filed

amendments to his original petition, which is typically sufficient to prove those elements. *See In re Virovlyanskiy*, 485 B.R. 268, 272 (Bankr. E.D.N.Y. 2013) ("The first two factors are typically satisfied when a debtor files an amended petition or amended schedules and statements."), *aff'd*, No. 13 CV 1511 RJD, 2014 WL 1800411 (E.D.N.Y. May 6, 2014).[4] Furthermore, the Bankruptcy Court correctly concluded that creditor adduced sufficient evidence of knowledge on the part of debtor. The record plainly supports the Bankruptcy Court's finding that debtor was intimately familiar with his own finances. (*See, e.g.*, R2 at 302–20). It was not unreasonable for the Bankruptcy Court to infer from this extensive knowledge, as well as debtor's sophistication and education, that, at the time he filed the petition, he knew or should have known that the statements identified by the Bankruptcy Court were false. *See In re Casado*, 187 B.R. 446, 449 (Bankr. E.D.N.Y. 1995) (knowledge requirement satisfied where debtor "knew or should have known" about false statement); *In re Ishahak*, 130 B.R. 16, 19 (Bankr. E.D.N.Y.

1991) (same). Moreover, the sheer volume of false statements in the original Petition alone was enough to justify the Bankruptcy Court's conclusion that debtor knew of, or at the very least recklessly disregarded, their falsity. *See Casado*, 187 B.R. at 450 ("[T]he cumulative effect of all the falsehoods together evidences a pattern of reckless and cavalier disregard for the truth serious enough to supply the necessary fraudulent intent required by § 727(a)(4)(A)." (quoting *In re Diodati,* 9 B.R. 804, 808 (Bankr. D. Mass. 1981))).

The Bankruptcy Court also committed no error in concluding that the bulk of plaintiff's false statements were material because almost all of them plainly "related to the debtor's business transactions or estate which would lead to the discovery of assets, business dealings, or existence or disposition of property." *Moreo*, 437 B.R. at 65. Indeed, all of the specific statements the Bankruptcy Court identified as the basis for its Section 727(a)(4)(A) holding concerned issues critical to determining his financial status, such as (1) whether creditor held a secured or an unsecured lien, (2) whether any lien had attached within the previous year, (3) the status and amount in debtor's bank accounts, (4) debtor's interest in any businesses, and (5) the amounts and sources of his income.[5]

Debtor primarily challenges the Bankruptcy Court's conclusion on the fourth ele-

---

[4] For this reason, to the extent debtor argues that statements he made in the original Petition are true, those arguments are unavailing. For instance, in response to the Bankruptcy Court's skepticism about debtor's 2013 income as reported in the initial SOFA, debtor claims that it accurately reflects his adjusted gross income rather than his gross income. Apart from the instruction on the SOFA to report "the gross amount of income the debtor has received" (R1 at 35), the fact that debtor changed this number from $23,000 to $8,202 in his First Amended Schedules is sufficient to establish its falsity (*compare* R1 at 35 *with* R1 at 368). *See Virovlyanskiy*, 485 B.R. at 272. The same can be said for his 2014 year-to-date income (*compare* R1 at 35 (reported as $3,100) *with* R1 at 368 (reported as $7,696)) and income other than from employment or operation of a business (*compare* R1 at 35 (reported as "none") *with* R1 at 368 (reported as $9,800 from rental property and $22,200 in food stamps)), among other discrepancies.

[5] Debtor only challenges the materiality of his understatement of the balance in his New York Commercial Bank Account—*i.e.*, the $100 reported in the Petition versus the $181.53 that was actually in that account on the Petition date—claiming that the difference is too small to justify a discharge. (Appellant's Br. at 16, 21.) Given that the other statements that form the basis for the Bankruptcy Court's discharge are unquestionably material, however, the Court need not and does not address the materiality of this particular false statement.

ment, fraudulent intent. For every false statement identified by the Bankruptcy Court, debtor offers explanations as to why the original Petition and the various amendments prove his truthfulness at trial, but only his arguments with respect to the specific bases for the Bankruptcy Court's Section 727(a)(4)(A) holding will be summarized. *See Bordonaro*, 543 B.R. at 702. First, debtor argues that the petition and his amendments prove that he honestly made a mistake in failing to list creditor as a secured creditor and failing to indicate his property had been attached in the previous year. (Appellant's Br. at 14, 19.) Specifically, he points out that the Petition itself listed creditor as holding a money judgment in Schedule F, and debtor indicates that he thought money judgments were *per se* secured priority claims. (*Id.* at 14.) Thus, by listing creditor's claim as a "money judgment" in Schedule F, he indicated that the claim was secured but "in the wrong place" within the Petition. (*Id.*) Second, debtor argues that the Petition itself establishes he mistakenly marked the "No" box to indicate that he did not have an ownership interest in any company because in multiple other places throughout the Petition, he clearly indicated that his only source of income was from "operating a business." (*Id.* at 12.) Finally, with respect to debtor's "most material[ ]" false statements—his "misrepresentations regarding the amounts and sources of his income," *Bordonaro*, 543 B.R. at 702— debtor offers a plethora of explanations to explain each of the many discrepancies. For instance, to explain why he listed $23,000 as his income in the original SOFA, debtor claims that he thought it meant his adjusted gross income rather than his gross income. (Appellant's Br. at 9.) Likewise, debtor argues that he did not report his rental income in the original petition because his tenants had left in 2013 and he, therefore, was not receiving rental income on the Petition date.

(*Id.* at 15.) Finally, debtor attempts to explain the $3,100 he reported as his 2014 year-to-date income, despite a deposit of $8,621 during that period, as resulting from his first attorney's amortization of the $8,621 according to when it was earned, *i.e.*, that debtor only earned $3,100 of that amount in 2014. (*Id.* at 14–15.)

The Bankruptcy Court, however, declined to credit debtor's testimony generally and his claims of innocent mistake in particular. *See Bordonaro*, 543 B.R. at 699–700, 702. Again, there is no basis to second-guess these credibility determinations, as the trial court had the opportunity to observe firsthand "the demeanor, body language, tone, and reactions of the live witnesses," whereas this Court has "only the benefit of a written transcript" and the written filings that were present before the trial court. *United States v. Williams*, No. 11 CR. 663 AT, 2014 WL 4651968, at \*6 (S.D.N.Y. Sept. 15, 2014) (quoting *In re Case Nova of Lansing, Inc.,* 146 B.R. 370, 377 (Bankr. W.D. Mich. 1992)); *see also Southold*, 173 B.R. at 73; *Oquendo v. Scully*, No. CV 89-1208(RR), 1990 WL 88620, at \*5 (E.D.N.Y. June 11, 1990) ("Certainly the trial court, which had the opportunity to observe this testimony and to assess the witness's demeanor and candor, was in a far better position to make a credibility finding than this court."); *Norlin Corp. v. Rooney, Pace Inc.*, 744 F.2d 255, 261 (2d Cir. 1984) ("[A] trial court is in a better position to assess the credibility of testimony and make factual findings than an appellate court."); *In re Ciena Capital LLC*, 440 B.R. 47, 52 (S.D.N.Y. 2010) ("In reviewing findings for clear error, [the appellate court is] not allowed to second-guess either the trial court's credibility assessments or its choice between permissible competing inferences. Even if the appellate court might have weighed the evidence differently, it may not overturn findings that are not clearly erroneous." (altera-

tion in original)). In any event, debtor's arguments and citations to the record do not convince this Court that the Bankruptcy Court made a mistake in discounting debtor's credibility to the extent required to establish clear error. *See Dist. Lodge 26*, 610 F.3d at 51. As such, this Court defers to those credibility determinations. *See Persaud*, 496 B.R. at 678. As these determinations serve as the foundation for the Bankruptcy Court's finding of fraudulent intent, that finding will not be disturbed.[6]

In sum, the Bankruptcy Court did not clearly err in concluding that creditor satisfied its burden of proof under Section 727(a)(4)(A) or that debtor failed to offer an adequate explanation for the materially false statements. Therefore, the discharge pursuant to that section was warranted.

### III. CONCLUSION

For these reasons, the January 12, 2016 Order of the Bankruptcy Court, denying debtor's discharge, is affirmed. The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: January 20, 2017
      Central Islip, New York

\* \* \*

Appellant is proceeding *pro se*. Appellee is represented by Jennifer Coden, 6800 Jericho Turnpike, Suite 209E, Syosset, NY 11791.

---

[6] To the extent debtor argues that the false statements resulted from his attorneys' mistakes, this Court concludes that this explanation does not exonerate the misrepresentations because, given debtor's extensive knowledge of his own finances, the falsity of at least some of those statements—such as the indication that he did not own his own business—should have been "transparently plain" to debtor. *Dubrowsky*, 244 B.R. at 573; *see also Maletta*, 159 B.R. at 112. In addition, whether debtor's attorneys were, in fact, responsible for the misstatements debtor now identifies was a question of fact reserved for the Bankruptcy Court, and, therefore, it is not appropriate for this Court to address this issue for the first time on appeal. *See In re DPH Holdings Corp.*, 468 B.R. 603, 619 (S.D.N.Y. 2012) ("[I]t is in this Court's discretion whether to review issues raised for the first time on appeal that present only a question of law that requires no additional findings of fact."); *In re Pappas*, 239 B.R. 448, 453 (E.D.N.Y. 1999) ("As a general rule, an appellate court will not address arguments that initially were not presented to the lower court.").